# UNITED STATES DISTRICT COURT

for the

Middle District of Tennessee

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Residence Located at 7215 Hidden Lake Dr., Fairview,<br>Tennessee 37062 and All Other Storage Areas, Vehicles<br>and Units Associated Therewith | )<br>)<br>)<br>)<br>)<br>)    Case No. 19-mj-2339 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Middle _____ District of _____ Tennessee _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

     ☑ evidence of a crime;

     ☑ contraband, fruits of crime, or other items illegally possessed;

     ☑ property designed for use, intended for use, or used in committing a crime;

     ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252A | Trafficking of Child Pornography |
| 18 U.S.C. 1591, 1594 | Sex Trafficking |

The application is based on these facts:

See Attachment C

     ☐ Continued on the attached sheet.

     ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI Special Agent Carla Rexing

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/19/2019

*Judge's signature*

City and state: Nashville, Tennessee

United States Magistrate Judge Jeffery S. Frensley

*Printed name and title*

# **Attachment A**

*Descriptions of Places and Items to Be Searched*

**Premises**

The premises of 7215 Hidden Lake Drive, Fairview, Tennessee 37062, in the Middle District of Tennessee, including all attached and unattached rooms, attics, basements, garages and storage areas, safes, briefcases, containers, trash area, surrounding grounds, vehicles and outbuildings assigned to or part of the premises.

**Premises' Physical Description**

Stories: Two-story Residence
Construction type: Brick and siding construction
Color: Red brick with light-colored siding material
Mailbox: Dark-colored and attached to a wood post

**Premises Location**

This residence is located within Williamson County, Tennessee, more specifically in Fairview, Tennessee. It is located at 7215 Hidden Lake Drive, Fairview, Tennessee. The residence is a single-family, two story residence consisting of red brick and light-colored siding on the front and light-colored siding on the sides of the residence. There is a two-car attached garage on the front of the residence with a paved driveway. The mailbox is dark-colored and attached to a wood post on the left side of the driveway.

**Vehicles**

Owned or operated by Christopher Stafford

**Item/Computer**

Any cellular phones, computer(s), related peripherals, and computer media found within the above described premises or vehicles.

Documents that are indicia of ownership, receipts, passwords

1



Front view of house. Has privacy fence around back

2



View from hidden lake circle and drive intersection

3

**Attachment B**

Items to Be Seized

Materials that constitute evidence of the commission of criminal offenses, or contraband, the fruits of crimes, or property designed or intended for use or which is or has been used as the means or committing criminal offense, namely violations of 18 U.S.C. §§ 2252A, 1591, and 1594, including but not limited to the following:

1. Any records or other items, including electronic correspondence, pertaining to the transmission, distribution, receipt, solicitation, advertising, or possession of child pornography as defined in 18 U.S.C. § 2256(8); visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2); child erotica; a sexual interest in children; or sexual activity involving children.

2. Any records or other items, including electronic correspondence, pertaining to recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting by any means a person, or who benefits financially or by receiving anything of value to cause a person to engage in a commercial sex act as defined in 18 U.S.C. §§ 1591 and 1594.

3. Any records or other items pertaining to any minor depicted engaging in sexually explicit conduct.

4. Correspondence, "trophies," grooming aids, and/or other items demonstrating an interest in the exploitation of children.

5. Any visual depictions of minors.

6. Any computer software that may be utilized to create, receive, distribute, store, modify, or destroy any of the evidence sought.

7. Items containing or displaying passwords, access codes, user names, or other identifiers necessary to examine or operate items, software, or information seized.

8. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

9. Computer software, hardware, or digital contents related to the sharing of Internet access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address.

10. Any records or other items evidencing possession, use, ownership, or access to any of the premises to be searched or property to be seized, including, but not

1

limited to, electronic sales receipts, bills for utilities and Internet/online access, credit card receipts, and rental agreements and other identification documents.

11.     If computers or other digital devices are found in a running state, the investigator may acquire evidence from the devices prior to shutting the devices off. This acquisition may take several hours depending on the volume of data.

2

**Attachment C**
**Affidavit in Support of Search Warrant**

I, Carla Rexing, being first duly sworn, do depose and state as follows:

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since May 2017. Prior to that time, I was an intelligence analyst with the FBI from May 2009 through May 2017 assisting in investigations of counterintelligence, criminal, cyber, and terrorist threats. I am currently assigned to the FBI Memphis Division, Nashville Resident Agency's Violent Crime Gang Task Force and investigate federal crimes within the Middle District of Tennessee, to include statutes involving the sexual exploitation of children under Title 18, United States Code, Section 2251, et seq, and statutes involving peonage, slavery and trafficking in persons under Title 18, United States Code, Sections 1591 and 1594.

2. As part of my daily duties, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A, and trafficking in persons, in violation of 18 U.S.C. §§ 1591 and 1594. I have received training in the area of child pornography and child exploitation and have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.

3. This affidavit is made in support of an application for a warrant to search the residence located at 7215 Hidden Lake Dr., Fairview, Tennessee 37062 ("Subject Premises"), a single-family, two-story residence consisting of red brick and light-colored siding on the front and light-colored siding on the sides of the residence. There is a two-car attached garage on the front of the residence with a paved driveway. The mailbox is dark-colored and attached to a wood post on the left side of the driveway.

4. The purpose of this application is to seize evidence of violations of 18 U.S.C. § 2252A(a)(5)(B), which make it a crime to possess child pornography; violations of 18 U.S.C. § 2252A(a)(2), which make it a crime to distribute or receive child pornography in interstate commerce by computer; 18 U.S.C. § 2252A(a)(1), which make it a crime to transport or ship child pornography in interstate commerce; 18 U.S.C. § 1591, which make it a crime to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means a person, or who benefits financially or by receiving anything of value to cause a person to engage in a commercial sex act; and 18 U.S.C. § 1594, which make it a crime to attempt to violation 18 U.S.C. § 1591.

5. I am familiar with the information contained in this affidavit based upon the investigation I have conducted, facts related to me by other law enforcement officers, and my conversations with other law enforcement officers who have engaged in numerous investigations involving child exploitation and child pornography.

1

6. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2252A, 1591, and 1594 are located at the Subject Premises and within computer(s), related peripherals, and computer media found at the Subject Premises.

7. As a result of the instant investigation described more fully below, there is probable cause to believe that evidence, contraband, fruits, and instrumentalities of violations of federal law, including 18 U.S.C. §§ 2252A, 1591, and 1594 are present at the Subject Premises.

### Child Exploitation Crimes - Statutes and Nature of Offenders

8. In my capacity as an investigator of criminal violations relating sex trafficking, child exploitation, and child pornography, I have become familiar with the following federal statutes:

- Transportation of Child Pornography, 18 U.S.C. § 2252A(a)(1), which makes it unlawful for someone to knowingly mail, or transport or ship using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography.

- Receipt and Distribution of Child Pornography, 18 U.S.C. § 2252A(a)(2), which makes it unlawful for someone to knowingly receive or distribute any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

- Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B), which makes it unlawful for someone to knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means.

- Sex Trafficking of Children or by Force, Fraud, or Coercion, 18 U.S.C. § 1591, which makes it unlawful for any person in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means a person; or benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described above in this paragraph, to engage in a commercial sex act.

2

- Attempted Sex Trafficking of Children or by Force, Fraud, or Coercion, 18 U.S.C. § 1594, which makes it unlawful to attempt to violate 18 U.S.C. § 1591.

- Pursuant to 18 U.S.C. § 2256(8), Child Pornography is defined as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct."

- Pursuant to 18 U.S.C. § 2256(1), the term "minor," as "any person under the age of eighteen years."

9. Based upon my knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the collection of child pornography:

- Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

- Individuals who possess, transport, receive, and/or distribute child pornography often collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or other images, as well as literature describing sexually explicit activity involving children. Such individuals frequently store their child pornography on multiple electronic, optical, and/or electromagnetic storage media, including not only their computer, but also on external hard drives, floppy disks, CD-ROMs, DVDs, memory sticks, thumb drives, cell phones, PDAs, and other such media. Many of these individuals also collect child erotica, which consists of items that may not rise to the level of child pornography but which nonetheless serve a sexual purpose involving children. These individuals often use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

3

- Individuals who possess, transport, receive, and/or distribute child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, Internet Relay Chat, newsgroups, instant messaging, and other similar interfaces.

- Individuals who possess, transport, receive, and/or distribute child pornography often collect, read, copy, or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange, or commercial profit. These names may be maintained in the original medium from which they were derived, in address books or notebooks, on computer storage devices, or merely on scraps of paper.

- Most individuals who possess, transport, receive, and/or distribute child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. These individuals almost always maintain their collections in the privacy and security of their homes or other secure locations such as vehicles. These individuals may keep their collections in locked containers including filing cabinets, safes, or lockboxes. These individuals may also maintain their collections in password-protected or encrypted electronic media. They may keep these passwords, and other information concerning their use of the computer, on handwritten or printed notes that they store in personal areas and around the computer.

- Possessors, traders and distributors of child pornography sometimes store their illegal images and videos online in remote storage accounts such as DropBox or iCloud. Therefore, any records, documents, invoices and materials in any format or medium that concern online storage or other remote computer storage could indicate that a person at the Subject Premises is storing illegal material in an online storage account.

- Files, logs, and records relating to P2P files can contain the names of files sent through the P2P service, as well as the date and time the files were transferred. These records could help identify the individual who transferred the child pornography images at the Subject Premises. Additionally, these records can provide historical information about the trading of child pornography by individuals at the Subject Premises.

4

**Relevant Definitions**

10.   As part of my training, I have become familiar with the Internet, a global network of computers and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite. Due to the structure of the Internet, communications between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail"). An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the Internet – for example, through a university, an employer, or a commercial service – which is called an "Internet Service Provider" or "ISP" (see definition of "Internet Service Provider" below). Once the individual has accessed the Internet, that individual can use Internet mail services, including sending and receiving e-mail. In addition, the individual can visit websites (see definition of "websites" below), and make purchases from them. Additionally, digital software or hardware exists that allows persons to share digital access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address; and examination of these items can reveal information about the authorized or unauthorized use of Internet connection at the residence.

11.   Set forth below are some definitions of technical and other terms, used throughout this affidavit, and in Attachments A and B hereto, pertaining to the Internet, computers, and child exploitation cases.

- **Computer**:   The term "computer" is defined by 18 U.S.C. § 1030(e)(1) to mean "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."

- **Computer Equipment**:   The term Computer equipment" means any computer hardware, computer software, computer-related documentation, storage media, and data.

- **Computer Hardware**:   Computer hardware, as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not

5

limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

- **Computer Passwords & Data Security Devices**:   Computer passwords and data security devices, as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

- **Computer Software**: Computer software is digital information that can be interpreted by a computer and any of its related components to direct the way they work.  Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities, communication and data security software, logs, history or backup files; encryption code, user names, passwords.  This information may be stored deliberately, inadvertently, or automatically.

- **Computer system, related peripherals, and computer media**:   As used in this affidavit, the terms "computer system and related peripherals, and computer media" refer to tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, thumb drives, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drives and other computer-related operation equipment, digital cameras, scanners, in addition to computer photographs, Graphic Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats, including, but not limited to, JPG, JPEG, GIF, TIF, AVI, and MPEG.

- **Internet**:     The Internet is a global network of computers and other electronic devices that communicate with each other via standard telephone lines, high-speed telecommunications links (e.g., fiber optic cable), and wireless transmissions. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

6

- **Internet Service Providers (ISPs) and the Storage of ISP Records**: Internet Service Providers are commercial organizations that are in business to provide individuals and businesses access to the internet. ISPs provide a range of functions for their customers including both wired and wireless access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including telephone-based dial-up, broadband based access via digital subscriber line (D.L.), mobile wireless broadband Internet access, cable television, dedicated circuits, or satellite-based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, that the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a telephone, cable, or attached broadband wireless cable modem, the subscriber can establish communication with an ISP over a telephone line, through a cable system, or through wireless digital signals and can access the Internet by using his or her account name and personal password. ISPs maintain records ("**ISP records,**") pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their "subscribers" use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files. Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an ISP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "**electronic storage,**" see 18 U.S.C. § 2510(17), and the provider of such a service is an "**electronic communications service.** "An "**electronic communications service,**" as defined by statute, is "any service which provides to users thereof the ability to send or receive wire or electronic communications. 18 U.S.C. § 2510(15). A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long-term storage services to the public for electronic data and files, is defined by statute as providing a "**remote computing service.**" 18 U.S.C. § 2711(2).

- **Internet Protocol Address (IP Address)**: Every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An IP address is a series of four numbers separated by a period, and each number is a whole number between 0 and 254. An example of an IP address is 192.168.10.102. Each time an individual accesses the

Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers. Most ISP's employ **dynamic IP** addressing, that is they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A **dynamic IP address** is reserved by an ISP to be shared among a group of computers over a period of time. The ISP logs the date, time and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records. Typically, users who sporadically access the Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial-up session. Once the session ends, the IP address is available for the next dial-up customer. On the other hand, some ISP's, including most cable providers, employ **static IP** addressing, that is, a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a **static IP address** is an IP address that does not change over a period of time and is typically assigned to a specific computer.

- **Sexually Explicit Conduct**: Sexually explicit conduct includes actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any persons.

- **User name** or **User ID**: Most services offered on the Internet assign users a name or ID, which is a pseudonym that computer systems use to keep track of users. User names and ids are typically associated with additional user information or resources, such as a user account protected by a password, personal or financial information about the user, a directory of files, or an email address.

- **Visual Depictions**: "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.

- **Website**: A website consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from the web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

### Computers and Child Pornography

12. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement

8

officers with whom I have had discussions, computers and computer technology affect the methods used by people who possess, receive, distribute, and transport child pornography in these ways.

13.     Producers of child pornography can now produce both still and moving images directly from a common video, digital camera, and other devices that create video and still images, including most cellular telephones and Personal Digital Assistants ("PDA"). Images and videos from such devices can be transferred easily to a computer using a hard-wired connection or through a wireless connection. Once on the computer, images can then be stored, manipulated, transferred, printed, or transferred to other devices or the Internet. Images and videos also can be edited by manipulating the lighting, cropping, or manipulating in some other way. Printed images can be scanned to create an electronic or computer-readable format. Because of these technologies, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large of an evidence trail for law enforcement to follow.

14.     The Internet allows any computer to connect to another computer. Electronic contact can be made to literally millions of computers around the world. The Internet allows users, while still maintaining anonymity, to locate (i) other individuals with similar interests in child pornography; and (ii) websites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. They can also distribute and collect child pornography materials with peer-to-peer ("P2P") file sharing, which uses software to link computers together through the Internet to form a network that allows for the sharing of digital files among users on the network. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the websites and images accessed by the recipient.

15.     The computer's capability to store images in digital form makes it an ideal repository for child pornography. Internal and external computer hard drives typically store vast amounts of data, and hard drives with the capacity of 500 or more gigabytes – which can store tens of thousands of images at very high resolution – are not uncommon. Other electronic storage media, such as thumb drives and memory sticks, can store hundreds of images and dozens of videos. Likewise, optical storage media, which includes CD-ROMs and DVDs, and electromagnetic storage media, such as floppy disks, also can hold hundreds of images and multiple videos. Such electronic, optical, and electromagnetic storage media are very commonly used by those who collect child pornography to store images and videos depicting children engaged in sexually explicit activity. Agents who execute child-

9

pornography search warrants often find electronic, optical, and/or electromagnetic storage media containing child pornography in the same location as or near the computer that was used to obtain, access, and/or store child pornography. However, smaller storage devices, such as "thumb" drives that can store gigabytes of information, can be stored in hidden locations, a pocket, briefcase, etc. Once these techniques are used, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

16. People who view and collect child pornography often highly prize their collection and will store some or all of their collection on such small, portable computer media, which can be easily hidden and/or transported due to the size of the media. For example, in addition to storing child pornography collections on and near their computers, such people often also store their child pornography computer media in locked, secure areas, including in their personal vehicles, especially if the collector is the sole driver of the vehicle(s). Such secure storage is readily transportable and makes it unlikely that others will discover their criminal activity.

17. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive or other storage device, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive or other storage devices can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive or other storage device until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space - that is, in space on the storage device that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space - for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

18. Many individuals who collect and traffic child pornography also collect child erotica, which consists of items that may not rise to the level of child pornography but which nonetheless serve a sexual purpose involving children. Such individuals also often collect written stories about sexual activity involving children.

19. Searching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:

10

- The volume of evidence: Computer storage devices (like hard disks, diskettes, tapes, laser disks) can store the equivalent of millions of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on-site.

- Technical Requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Because computer evidence is vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment may be necessary to complete an accurate analysis. Further, such searches often require the seizure of most or all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment.

In light of these concerns, I respectfully request the Court's permission to seize the computer hardware (and associated peripherals) that are believed to contain some or all of the evidence described in the warrant, and to conduct an off-site search by Homeland Security Investigations, Federal Bureau of Investigation, or any federal or state law enforcement agency of the hardware for the evidence described, if, upon arriving at the scene, the agents executing the search conclude that it would be impractical to search the computer hardware on-site for this evidence.

### Information about Kik Application

20. Kik Interactive Inc., a United States-based company (previously a Waterloo-based technology company) that owns an instant messenger application (app) called Kik Messenger, also known as Kik, is used on mobile devices and is available free of charge on iOS, Android, and Windows smart phone operating systems. The app is heavily marketed to teen users. After users register a username, Kik Messenger uses a smartphone's data plan or Wi-Fi to transmit and receive messages, photos, videos, sketches, mobile webpages, and other content. Kik is known for its features that include preserving users' anonymity, including allowing users to register without providing a telephone number and

11

preventing users from being located on the service (including by the company itself) through any information other than their chosen username. According to Kik Interactive, as of May 2016, the app had approximately 300 million registered users, and was used by approximately 40 percent of United States teenagers.

21. Kik Messenger has drawn controversy due to its reported involvement in a number of incidents of child exploitation. The app has been criticized as unsafe for minors due to its anonymity features and allegedly weak parental control mechanisms.

## Investigation

22. On or about October 31, 2019, the Shelbyville Police Department ("SPD"), located at 109 Lane Parkway, Shelbyville, Tennessee, received a complaint regarding a male user on Kik Messenger. The SPD contacted FBI Knoxville/Tullahoma RA ("FBI Knoxville") regarding the complaint. An SPD detective and FBI Special Agent interviewed the complainant that day.

23. In late November of 2019, FBI Memphis/Nashville RA ("FBI Nashville") received an investigative referral pertaining to a possible suspect identified by FBI Knoxville who was located in the FBI Nashville area of responsibility. The suspect was identified as having distributed videos depicting suspected child exploitation material via the Kik application in November 2019.

24. The complainant identified Kik username *titansfan20180000* as an account being used to sexually exploit children. The complainant had been participating in Kik chat groups involving BDSM and sexual taboo. The complainant has been in chat sessions with *titansfan20180000* dating back several months to April 2019.p

25. According to the complainant, on or about April 14, 2019, *titansfan20180000* sent a full-face image of himself to the complainant. On or about June 28, 2019, *titansfan20180000* sent another image of himself to complainant. The images are of a white male in his mid to late forties with a short haircut. The images received by the complainant on these separate dates are believed to be the same person.

26. According to a review of the Kik chats between complainant and *titansfan20180000* that occurred in October and November 2019, *titansfan20180000* discussed a desire to have sex with children. On October 30, 2019 and October 31, 2019, *titansfan20180000* sent messages to the complainant detailing an arrangement where he could exchange methamphetamine for sex with children in Shelbyville, Tennessee, as detailed below. In the messages referenced hereinafter, *titansfan20180000* will be referred to as "***Titansfan***":

> ***Titansfan:***    Hey sexy
>
> ***Titansfan:***    Would u be interested in joining a couple with a 9 and 13 yr old girl in Shelbyville? Just have to get a couple hundred bucks in meth?

12

| | |
|---|---|
| Complainant: | Seriously? Wow. But I dunno where to get meth (emoji) |
| *Titansfan:* | They do |
| *Titansfan:* | Man wife n young daughters |
| Complainant: | Ooohh. For real, tho? I mean this isnt just some junkie tryin to pull a fast one? |
| *Titansfan:* | I don't think so |
| *Titansfan:* | Would u be game? All could be involved. Said 13 yr old was on meth sucking dog the other night |
| Complainant: | What? That's insane. I could be down for that |
| *Titansfan:* | Fucking hot huh? |
| Complainant: | Hots not even the word |
| *Titansfan:* | I agree. 9 yr old is chubby but cute |
| Complainant: | You've met them? Seen pics? |
| *Titansfan:* | Pics yes. He sucks cock too |
| Complainant: | Where do you even meet these people? I'm impressed (emoji) |
| *Titansfan:* | I think that scene could be fun |
| Complainant: | So the dad is bi? |
| *Titansfan:* | He is in Shelbyville |
| *Titansfan:* | Yes |
| Complainant: | Sweet. I do like bi guys |
| *Titansfan:* | Would that not be fun though |
| Complainant: | Is the 9 yo the only one you've seen pics of? |
| *Titansfan:* | And 13 and him and wife |
| *Titansfan:* | It would be fun. U smoke meth? |
| Complainant: | What do they look like? I'm totally not attracted to people that have that meth junkie look. |

13

| | |
|---|---|
| Complainant: | I've never smoked it. Only snorted |
| **Titansfan:** | Not meth junkie looking |
| Complainant: | Ok. Cool |
| **Titansfan:** | Would u do it and get freaky? |
| Complainant: | Hahaha you shouldnt even have to ask. I have new toys I need to break in…hahaha |
| **Titansfan:** | I've missed talking to u. I knew you'd like it even with 9yr old pussy involved |
| Complainant: | Lol |
| Complainant: | I've been pretty busy lately (emoji) |
| **Titansfan:** | You're still awesome and nasty |
| Complainant: | Of course I am |
| **Titansfan:** | So u interested if I can make it happen? |
| Complainant: | Just tell me when and where |
| **Titansfan:** | Ok. Gonna bring that willing pussy? |
| **Titansfan:** | Ur on with 9? |
| **Titansfan:** | Ok |
| Complainant: | Well, I can't leave it at home.. Bahahaha |
| **Titansfan:** | lol. Just making sure your ok if 9 yr old is there? |
| **Titansfan:** | She's a cutie |
| **Titansfan:** | Kinda chubby |
| Complainant: | I dont want anyone to get really hurt or anything. They dont abuse them do they? |
| **Titansfan:** | No |
| Complainant: | Ok. That's cool then |
| **Titansfan:** | It's just fun |

14

| | |
|---|---|
| Complainant: | I mean I would not flog or take a violet wand to some kid or anything like that |
| *Titansfan:* | Said 13 yr old did meth and sucked the dog |
| *Titansfan:* | Me either but we can have fun n be dirty |
| Complainant: | Is that the only 2 kids they have? Like it's not gonna be a house full of snot nosed, screaming brats, right? |
| *Titansfan:* | That's it |
| *Titansfan:* | Fuck I love how dirty you are |
| Complainant: | Where will this happen? I'm not dragging my ass into some couch lane slum…lol |
| *Titansfan:* | Lol. Hotel |
| Complainant: | Couch lane is a really disgusting neighborhood here. |
| Complainant: | Ok. A hotel is cool. |
| *Titansfan:* | I will buy a room. |
| *Titansfan:* | U wouldn't do couch lane? |
| *Titansfan:* | I mean fuck we are dirty? |
| Complainant: | Its gross. Like, you can smell it before you even get to the road. |
| Complainant: | Different kinda dirty, babe |
| *Titansfan:* | Ok. I will get room |
| *Titansfan:* | If you're ok with that scene |
| Complainant: | Are you sure these people are legit? |
| *Titansfan:* | I think so. |
| *Titansfan:* | From what he's sent |
| Complainant: | What do you mean? |
| *Titansfan:* | Him and pics of wife. Etc |
| Complainant: | Is it just what he said or did he send you |

15

Complainant: Ooooh

Complainant: Are they hot?

Complainant: She got good tits?

Titansfan: Yes. Girl is chubby but cute. Wife is cute. Would be fun

Titansfan: Opportunity for young pussy

Complainant: What about the older daughter? What's she like? What race are they?

Titansfan: White. She's sexy

Titansfan: It's dirty fun baby. I thought u would like

Complainant: Cool. I don't think I'm racist. I'm just not into black chics

Titansfan: She's not black

Complainant: So they want $200 or meth?

Titansfan: They just want meth

Complainant: So you can get that? I've no idea where to get anything here except maybe a lil weed..lol

Titansfan: They do

Titansfan: Could be fun. Would u smoke some?

Complainant: I might. I told ya, I never smoked it

Titansfan: That would be cool. Get you tweaking n naked. Cock pussy and young cunt. Lol

Complainant: Your heaven …hahaha

Titansfan: Sounds fun as shit huh

Complainant: Like something none of us would ever forget…lol

Titansfan: Exactly

Titansfan: U like young boys too or just girls?

Complainant: You know I'm bi

16

| | |
|---|---|
| *Titansfan:* | Another lady in ky. She's real. Has a 4 yr old grandson |
| *Titansfan:* | She sucks his cock |
| Complainant: | That redefines grandmotherly love |
| *Titansfan:* | U like? |
| Complainant: | I dunno. Never seen anything with a boy that young. |
| *Titansfan:* | Would you try |
| Complainant: | I dunno. I might |
| *Titansfan:* | He is autistic and can't talk |
| *Titansfan:* | U could suck away |
| Complainant: | Does he even get an erection, tho? |
| *Titansfan:* | Yes |
| *Titansfan:* | She says he does |
| *Titansfan:* | And gets a piss hard on |
| Complainant: | Hmm |
| Complainant: | Could be interesting |
| *Titansfan:* | Wants me to rub my hard cock on his cock n balls n ass |
| *Titansfan:* | I want you involved though |
| Complainant: | How? |
| Complainant: | What would I do? |
| *Titansfan:* | Play |
| *Titansfan:* | Is it too dirty for u? |
| Complainant: | Is anything too dirty for me? Lol and smh |
| *Titansfan:* | lol. No |
| *Titansfan:* | Fuck. I'd jack my cock on infant cunt. Lol |

*[break in conversation]*

**Titansfan:**   Mainly I was contacting you about the meth couple and to see if U wanted in.

**Titansfan:**   And I missed u. Others are lame.

Complainant:   Fuck yes

**Titansfan:**   I love talking to you

Complainant:   I guess a lot of people would think the same thing as me… that they may not be legit

**Titansfan:**   I did at first too

**Titansfan:**   It could a blast though

Complainant:   What convinced you?

**Titansfan:**   The pics.

Complainant:   I mean, I trust you. You're really a smart guy and if you believe them…

**Titansfan:**   I do. They are dirty

**Titansfan:**   U smoke some too. Hell it would be awesome.

Complainant:   I agree… very memorable

**Titansfan:**   Definitely. Cock. Pussy and young pussy. Dog too

Complainant:   You cant bring a dog to a hotel..lol

Complainant:   Well, not all of them

**Titansfan:**   He said they would host

**Titansfan:**   Can u imagine how much fun that would be

**Titansfan:**   Will you tweak too?

Complainant:   Find out what part of town they live in. I'll tell you if it's a really bad area..lol

**Titansfan:**   Lol. Ok.

Complainant: You might could talk me into it..lol

*Titansfan:* Lol. I think I could.

Complainant: We'll see (emoji)

Complainant: So about when are we talking?

*Titansfan:* Not sure.

*Titansfan:* The kids involved is a huge turn on

Complainant: I know. You can hardly wait, I bet.. lol

*Titansfan:* Well. Don't u think it's hot?

Complainant: What do you wanna do?

*Titansfan:* All. U getting squeamish on me? Lol

Complainant: Hell no. Just wonderin what's on your mind is all

*Titansfan:* U know I'm dirty.

*Titansfan:* U are too

*Titansfan:* What turns ya on more. The meth couple or sucking the 4 yr old

*Titansfan:* ?

Complainant: Couple.

Complainant: Sorry. Was putting a movie on

*Titansfan:* It's ok sexy

*Titansfan:* What ya watching? Kindergarten orgy? Lol

*Titansfan:* I bet there are a bunch of pedo teachers

Complainant: Hahahahah

Complainant: You think so?

*Titansfan:* Yes. They get busted a lot. Men and women. Lol

Complainant: Are the couples girls experienced at all?

19

**Titansfan:** If u wouldn't get in trouble would u get naked with kindergarten kids ?

**Titansfan:** Says they are

Complainant: Probably

**Titansfan:** That would be kinda fun

Complainant: I mean more than just the dog

**Titansfan:** Would u like the lil boys or girls more?

Complainant: Both. I cant pick…lol

Complainant: Has dad been with either girl?

**Titansfan:** Lol. Both are cool with me

**Titansfan:** Yes. Both he says

Complainant: What do you prefer?

**Titansfan:** Girls

Complainant: Whys that?

**Titansfan:** I'm cool with u playing with young cock though

Complainant: Have you seen dad naked?

**Titansfan:** Yes.

Complainant: decent?

**Titansfan:** Nice cock. Slim.

**Titansfan:** Would it turn u on naked with a group of naked kindergarten kids?

Complainant: Depends on what happens…lol

Complainant: You?

**Titansfan:** Fuck yes it would if we could get dirty

Complainant: Yeah?

**Titansfan:** Yes. Don't you think

20

Complainant: What kinda stuff would you wanna do?

Titansfan: With?

Titansfan: U tell me baby. I wanna here how dirty u are

Titansfan: U know I'm game

Complainant: I'd wanna see you cum as much as possible

Titansfan: Mmmm

Titansfan: I want you to cum too

Complainant: I'm sure we both could…lol

Titansfan: Lol. So u not ok with playing with autistic boys cock?

Complainant: I dunno. Like I said, it would just depend on if he liked it

Titansfan: She says he does

Titansfan: Gets hard. She rubs her pussy on his cock

Complainant: Has she fucked him?

Titansfan: Yes

Titansfan: Said he loves getting sucked

Complainant: How long have you been talking to the couple here?

Titansfan: Month or so

Titansfan: The boy is a ky ladies grandson

Complainant: Yeah

Titansfan: I think it could be fun. Too pervy?

Complainant: Not at all

Titansfan: Good baby.

Complainant: Just the couple is closer and sounds more fun

Titansfan: True

Complainant: What all are they into?

*Titansfan:* Young porn. Dogs. Meth.

Complainant: Lol

*Titansfan:* The fun stuff. Lol

*Titansfan:* What's the youngest porn u have seen?

Complainant: I guess about 5 or 6 but it was just pics

*Titansfan:* I've seen younger getting cock and cum

Complainant: Yeah?

*Titansfan:* Yes. It's hot. Even seen moms sucking young sons. 1-4

Complainant: Can they even cum tho?

*Titansfan:* No

Complainant: What's the best you've seen?

*Titansfan:* Infants fucked. I've seen it all.

Complainant: I've seen very little

*Titansfan:* It's hot af

Complainant: What is?

*Titansfan:* What u think. Lol

Complainant: Infants?

*Titansfan:* Yes n young porn. Would u watch infant?

Complainant: I guess it would depend on what it was

*Titansfan:* What would ya watch. Lol

Complainant: Like, I dont wanna see one killed or anything…lol

*Titansfan:* Lol. Of course not.

*Titansfan:* Just taking cock.

22

**Titansfan:** I've seen a few vids of guys fucking dead chics

Complainant: Whaat? That sounds kinda boring too...lol

**Titansfan:** Lol. They just layed there.

Complainant: Hahaha I'm sure

**Titansfan:** Lol.

Complainant: So does the mom get with the kids too?

**Titansfan:** Yes

**Titansfan:** She shot the 13 yr old up

Complainant: With what?

**Titansfan:** They are filthy

**Titansfan:** Meth

**Titansfan:** That's when she sucked the dogs cock

Complainant: They make vids?

**Titansfan:** No, He's not that dumb.

Complainant: Hahaha

**Titansfan:** Sounds fund though huh

Complainant: They sound like ppl I wanna meet, for sure

Complainant: Mmm

**Titansfan:** Would u watch me jack off on infant pussy?

**Titansfan:** Me too

Complainant: They aren't worried the kids will go to school and tell tho?

Complainant: I'd watch you jack off anywhere

**Titansfan:** I guess not.

**Titansfan:** Would u enjoy it though

23

| | |
|---|---|
| Complainant: | Probably |
| *Titansfan:* | (emoji) u didn't sound sure. Lol |
| *Titansfan:* | I know I'm a perv. Lol |
| Complainant: | Meh, you are who you are |
| *Titansfan:* | Who else you talk this dirty with? |
| *Titansfan:* | Aren't we all |
| Complainant: | No one...lol |
| Complainant: | And yep, we sure are |
| *Titansfan:* | I'm glad I can talk to you. U ever run into other pervs wanting taboo? |
| *Titansfan:* | Would u do the young cock scenario too? |
| *Titansfan:* | ? |

27. On or about November 1, 2019 beginning at 10:30PM, *titansfan20180000* sent messages to the complainant with statements indicated the couple previously mentioned in chats in Shelbyville, Tennessee, are real people, as well as the exchange of methamphetamine for sex with children. *Titansfan20180000* sent an additional image of himself to the complainant, along with multiple messages referencing the sexual exploitation of children. Directly underneath the image *titansfan20180000* sent of himself was the word "camera." Typically, having the word "camera" appear underneath a posted image indicates the picture was taken within the Kik application at that time, versus an image posted from a user's photo gallery. This kind of image is referred to as a "live image." If a user posts an image from the photo gallery of the phone, the word "camera" does not appear. The Kik messages included the following:

| | |
|---|---|
| Complainant: | So, these ppl are for real? You're sure? I dont wanna get all excited just to be let down. |
| *Titansfan*: | U know I've never seen your face and body or nudes much with you. I think your fucking hot and sexy. Please show me. |
| Complainant: | You know I don't really do nudes..lol. |
| *Titansfan*: | They are real. Would u want the 9, 13 and dog involved? |
| *Titansfan*: | Please baby. Please |

24

Complainant: But you've seen my face and tits plenty..hahaha. I used to post them in that group.

*Titansfan*: I think you are sexy af

*Titansfan*: Please.

Complainant: I wanna see whatever happens. Let it get as wild as it can.

*Titansfan*: I want to see more of you. I really like you

*Titansfan*: I'm game for whatever too. Will u snort meth when we do it?

[break in conversation]

*Titansfan*: [posts image]



*[break in conversation]*

*Titansfan*: U know any meth pervs there?

Complainant: A few. This place is riddled with meth freaks

*Titansfan*: Ones that would share kids?

| | |
|---|---|
| Complainant: | I dont know any that well..lol. We're not like, secret sharing buddies (emoji) |
| *Titansfan*: | Could u talk to them more? They get geeked n they will be pedo |
| Complainant: | The ones I know? |
| *Titansfan*: | Yes. Are they pervs? |
| *Titansfan*: | I'd buy the meth |
| Complainant: | I've no idea. But why would I need to do that if you already have these people ready to go? |
| *Titansfan*: | Back up |
| Complainant: | Are you just messin with me, dude? Or is this for real? |
| *Titansfan*: | Ask them. |
| *Titansfan*: | It's real baby. I've been talking to them |
| *Titansfan*: | But I gotta ask if you're down. Geez |
| Complainant: | I'm not just gonna come straight out and ask somebody that..lol. I mean, the only way I know any of them is thru damn charity work |
| *Titansfan*: | Are they meth heads? |
| Complainant: | If I met them online in a taboo chat or something, it would be different |
| *Titansfan*: | Ok. Are u ok with 9, 13 yr old pussy and dog cock if inset it up? |
| Complainant: | I might even know this couple. The way I know most tweakers that I know is working with a pet food bank. |
| Titansfan: | Hey e need to find tweakers with kids |
| *Titansfan*: | We |
| *Titansfan*: | By the way. I love you. |
| Complainant: | I'm sure the ones you know you introduce us to more, couldnt they? I mean, in my contact with them I cant really broach that subject. |
| Complainant: | Awwwww you're so sweet hun |

26

| _Titansfan_: | I'm hoping they can. That scenario is hot. We need the meth involved. |
|---|---|

_[break in conversation]_

| _Titansfan_: | Help me find freaks |
|---|---|
| Complainant: | I just wanna know that they are for real and this isnt just fantasies n shit. I dont like being disappointed |
| _Titansfan_: | They are real. It's not a fantasy. But then again we're dealing with meth heads |
| _Titansfan_: | I just want you to be down and stfu up. |

28. On or about November 4, 2019, titansfan20180000 stated the man from Shelbyville, Tennessee, referenced above goes by the name "J Hart." On or about November 5, 2019, _titansfan20180000_ sent Kik unique username "buddyl1977" as "J Hart's" unique Kik username to complainant. _Titansfan20180000_ encouraged the complainant to contact "buddyl1977."

29. On or about November 5, 2019, _titansfan20180000_ distributed two videos depicting the sexual exploitation of children to the complainant. The Kik messages included the following:

| _Titansfan_: | [Sends Video 1] |
|---|---|
| Complainant: | Who is that? |
| _Titansfan_: | Just a vid. Like? |
| _Titansfan_: | [Sends Video 2] |
| Complainant: | Oh. I thought maybe it was that J guy |
| _Titansfan_: | U like? |

30. On or about November 5, 2019, the videos sent by _titansfan20180000_ were forwarded from complainant's Kik account to a Kik account utilized by law enforcement in the presence of an SPD detective and FBI Special Agent. The SPD utilized an Apple iPhone 6 to download the videos originally sent by _titansfan20180000_. The videos were then recovered from the Apple iPhone 6, and a subsequent Cellebrite extraction was performed by an SPD lieutenant on November 5, 2019. On December 12, 2019, I reviewed the two videos sent by _titansfan20180000_ to the complainant:

27

- Video 1, titled IMG_0104.mp4: The video is approximately 10 seconds in duration. The video depicts a white female child who is approximately 10-12 years of age. The female child has dark hair and is not visibly dressed. She is lying on her back and is visible from her head to her shoulders. A male is straddling the female child. The male has an erection and is masturbating. The male ejaculates on the female child's face.

- Video 2, titled Image_0103.mp4: The video is approximately 59 seconds in duration. The video depicts a white female child who is approximately 8-10 years old. The female child's head and arm are visible. She has a shirt with a black and white sleeve. A white male adult, visible from the pelvis, lowers his pants and the female performs oral stimulation of the male's penis. The male is standing and dressed in what appears to be a pair of sweat pants and a black shirt.

31. On or about November 8, 2019, an FBI Special Agent submitted the hash values of the videos to the National Center for Missing and Exploited Children (NCMEC) LES Portal for comparison to known values. The hash values submitted were not known values in the NCMEC database.

32. On or about November 25, 2019, Kik provided subscriber records for *titansfan20180000* subsequent to an FBI Administrative Subpoena request. The Kik subscriber records contained the following Internet Protocol (IP) information, 68.52.242.87, remote port 53222, 2019/11/25 14:43:36 UTC. On the same date, an FBI Special Agent conducted a Whois IP lookup of the aforementioned IP address via ultratools.com. The IP lookup indicated that the Internet Service Provider for that IP address is Comcast Communications, Inc.

33. On or about November 26, 2019, Comcast Communications, Inc., provided results to an FBI Administrative Subpoena for the subscriber records associated with the aforementioned IP address that was identified in the Kik IP logs associated with *titansfan20180000*. The subscriber records from Comcast Communications, Inc., identified Shannon Stafford, 7215 Hidden Lake Drive, Fairview, Tennessee, as the subscriber.

34. On or about November 26, 2019, the FBI conducted records checks on Stafford and 7215 Hidden Lake Drive, Fairview, Tennessee, to identify any adult males residing at the residence. Records checks identified Christopher Andrew Stafford, date of birth 02/19/1972, as residing at the same address. A Tennessee driver's license photograph of Stafford, issue date 07/31/2015, was obtained. The driver's license photograph was compared to the images sent by *titansfan20180000* to complainant in April, June, and November of 2019. Based on this comparison, the user of *titansfan20180000* was determined to be Christopher Andrew Stafford.

35. The IP logins provided by Kik from November 4, 2019 to November 6, 2019 include two IP addresses: the aforementioned Comcast Communications IP address and 166.177.59.94.

28

AT&T was identified as the provider for IP address 166.177.59.94 but did not have any identifying records for that IP address.

36. An open source internet query of "Christopher Stafford Nashville TN" provided results for a news article, https://www.nashville.gov/News-Media/News-Article/ID/2573/OffDuty-Officer-Christopher-Stafford-Arrested-on-DUI-Gun-Charges." The article included an image of Christopher Stafford, which matched the aforementioned Tennessee driver's license photograph. The article further indicated Stafford was arrested on DUI and gun charges in February 2014. At the time, Stafford was an off-duty North Precinct Officer. Stafford's criminal history lists an arrest for DUI on February 19, 2014, by Metropolitan Nashville Police Department for DUI with conviction of the same on July 29, 2014.

37. An open source internet query of "Christopher Stafford Fairview TN" provided results for a business, Middle Tennessee Mobile Tire, LLC, operated by Stafford at his home address. Tennessee Secretary of State Business Entity Details confirmed this information, with an initial filing of June 3, 2019.

38. According to a law enforcement database query in December 2019, the following individuals were listed as residents of 7215 Hidden Lake Dr., Fairview, Tennessee from at least March 2015 through December 2019: Christopher Andrew Stafford, Date of Birth (DOB) in February of 1972; Shannon Dare Hawk, DOB in January 1971; Bella Grace Hawk, DOB in July 2004; and Gracie Hawk, unknown DOB.

## Conclusion

39. Based on the above information, I respectfully submit that there is probable cause to believe that possession, receipt, distribution, and transportation of child pornography offenses, in violation of Title 18, U.S.C. § 2252A and attempted sex trafficking of children offenses, in violation of Title 18 U.S.C. §§ 1591 and 1594 have been committed, and that evidence, instrumentalities, fruits, and contraband relating to this criminal conduct, as further described in Attachment B, will be found in the Subject Premises, as further described in Attachment A.

40. I therefore respectfully request that this Court issue a search warrant for the residence located at 7215 Hidden Lake Drive, Fairview, Tennessee.

29